IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| | |
|---|---|
| BEST MEDICAL INTERNATIONAL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TATA ELXSI LTD., ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 1:10-cv-01273 (IDD) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim and Defendant's breach of contract counterclaim.

### I.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56(a), a party may move the court for summary judgment on any claim or defense, and the court shall grant the motion and enter judgment as a matter of law where the moving party has demonstrated that "there is no genuine dispute as to any material fact" in the case. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1985). The governing substantive law will determine which facts are material, and a fact will be material if a dispute as to that fact affects the outcome of the suit. *Id.* When ruling on a summary judgment motion, this Court must view the facts in the light most favorable to the nonmoving party. *Colgan Air Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Furthermore, the moving party must support its motion for summary judgment by citing to

pleadings and discovery documents that show through their contents "the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A)(B). The court may also consider other materials not in the record. *Id.* at 56(c)(3).

## II.  PROCEDURAL HISTORY

On November 12, 2010, Best Nomos, a division of Best Medical International ("Best Medical") filed a Complaint against Tata Elxsi, Ltd. ("Tata" or "Defendant") for breach of contract (Count I), loss of business (Count II), unjust enrichment (Count III), conversion (Count IV), and loss of use of equipment (Count V). Dkt. No. 1. On February 23, 2011, the Honorable Leonie M. Brinkema ordered that this case be reassigned to the undersigned Magistrate Judge per the parties' request. Dkt. No. 16.

On February 1, 2011, Defendant filed a motion to dismiss Counts II, III, and V of the Complaint. Dkt. No. 5. On March 18, 2011, this Court granted Defendant's motion to dismiss and dismissed Counts II and V of the Complaint with prejudice and Count III without prejudice, giving Plaintiff ten (10) days to amend Count III if it so elected. Dkt. No. 20.

On March 31, 2011, Defendant filed an Answer and Counterclaim. Dkt. Nos. 21, 22. In its Answer, Defendant asserts twelve (12) affirmative defenses to the Complaint, including consent, waiver, anticipatory repudiation, laches, failure to mitigate, unclean hands, breach of contract, failure of consideration, lack of consideration, and illusory promise. Answer 6-8. In its Counterclaim, Defendant brings a breach of contract claim against Best Nomos. On April 19, 2011, nineteen days after Defendant filed its Counterclaim, Best Nomos filed its Answer to the Counterclaim. Dkt. No. 23.

On June 14, 2011, Best Nomos filed a motion to dismiss the conversion claim (Count IV) from the Complaint, stating that Defendant returned the equipment at issue to Best Nomos, and that the parties agreed to the dismissal of the conversion claim. The Court granted the motion on June 20, 2011.

On June 20, 2011, Defendant filed a statement of undisputed facts.[1] Dkt. No. 32. On July 28, 2011, Defendant filed this Motion for Summary Judgment as to Plaintiff's breach of contract claim, which is the only claim of Plaintiff currently remaining in the Complaint, as well as its breach of contract claim against Best Nomos. Dkt. No. 41.

On July 14, 2011, after Best Nomos filed an Answer to the Counterclaim, Defendant filed a request for entry of default against Best Nomos as to the Counterclaim. Dkt. No. 33. The Clerk entered default as to Best Nomos on July 19, 2011. On July 26, 2011, Best Nomos filed a motion to set aside the Clerk's entry of default. Dkt. No. 37. On August 10, 2011, Defendant filed its motion for default judgment against Best Nomos and set the motion for hearing on September 1, 2011 along with this Motion for Summary Judgment. Dkt. No. 48.

On September 1, 2011, the undersigned Magistrate Judge heard argument on the Motion for Summary Judgment, the motion for default judgment, and Best Nomos's motion to set aside the Clerk's entry of default. Dkt. No. 59. The Court granted Best Nomos's motion to set aside the Clerk's entry of default; and accordingly, it denied as moot Defendant's motion for default judgment. Dkt. No. 60. In addition, after a review of the pleadings and exhibits submitted in connection with this Motion, the Court found that Best Medical was a necessary party that must be joined as the named plaintiff under FRCP 19 because Best Nomos is a division of Best Medical. *Id.* Ultimately, Best Medical is the party that would have to perform if this Court entered judgment in favor of Defendant on its counterclaim, and it is also the party that would

---

[1] The parties filed an amended statement of undisputed facts on September 23, 2011. Dkt. No. 68.

receive the benefit if this Court entered judgment against Defendant on the breach of contract claim. The Amended Complaint filed on September 20, 2011 shows Best Medical (hereinafter, "Plaintiff") as the named Plaintiff in this case.[2] Dkt. No. 67. Therefore, this memorandum opinion proceeds with an analysis of the facts set forth in the Amended Complaint, which appear to be the same in all other respects. *Compare* Am. Compl. *with* Compl.

Furthermore, as discussed below, this Court finds that Virginia's choice of law rules require this Court to analyze the facts of this case with respect to Best Nomos's breach of contract claim under the law of India. In that regard, the Court ordered the parties to submit supplemental briefing on Defendant's Motion for Summary Judgment with regard to the application of Indian law to Best Nomos's claim. Dkt. No. 60. The parties filed their respective supplemental briefings on September 8, 2011 and September 14, 2011. Dkt. Nos. 61, 64. On September 16, 2011, this Court reconvened the hearing on Defendant's Motion for Summary Judgment. Dkt. No. 66. After hearing argument from counsel for both parties, this Court took the matter under advisement to issue this Memorandum Opinion.

### III. UNCONTESTED FACTS

Based on a review of the pleadings and the joint stipulation filed by the parties, this Court finds that the following are the uncontested facts of this case. Plaintiff is a Virginia corporation doing business as Best Nomos, and Tata is an entity organized under the laws of India. Am. Compl. ¶¶ 1, 2. In March 2009, Best Nomos, on behalf of Best Medical, entered into an agreement with Tata for the reverse engineering of a software package, the Sonalis Phase I Project. Def.'s Mot. Summ. J. 10; Pl.'s Opp. Mot. Summ. J. 1; Joint Statement of Uncontested

---

[2] The caption also reads, "and its subsidiary Best Nomos;" however, testimony given by Tom Rowden, Plaintiff's 30(b)(6) witness, at his deposition, indicates that Best Nomos is a "dba" for Best Medical International. Tom Rowden Dep. 37:7, June 7, 2011. Furthermore, the original complaint filed in this case listed Best Nomos as a division of Best Medical. Therefore, it appears that Best Medical is the properly named Plaintiff.

4

Facts ¶ 1. There is no written contract memorializing the parties' March 2009 agreement; but the terms of the Sonalis Phase I project proposal that Tata sent to Best Nomos formed the basis, at least in part, of the March 2009 agreement. Def.'s Mot. Summ. J. 10; Pl.'s Opp. Mot. Summ. J. 5. This conclusion is based upon the use of the proposal terms in the subsequent purchase order for the Sonalis Phase I project that Best Nomos submitted to Tata. Def.'s Mot. Summ. J. 10; Pl.'s Opp. Mot. Summ. J. 5.

In addition to the Sonalis Phase I project, Tata sent Best Nomos proposals for Corvous TPS Maintenance and Sonalis Phase 2 Projects on May 19, 2009 and August 21, 2009, respectively. Joint Statement of Uncontested Facts ¶ 7. Again, based on the terms of these proposals, Plaintiff submitted unsigned purchase orders for these two projects to Tata. *Id.* ¶ 8. At the September 1, 2011 hearing, counsel represented that the parties understood that Tata would be performing the reverse engineering services in India. Counsel also agreed that the parties understood that pursuant to the agreement, Tata would upload the completed product on a server in India, and that Best Nomos's employees would then download it to their computers in their Pittsburgh, Pennsylvania office.

In January 2010, Ruth Bergin, Senior Vice President and Counsel for Best Medical, wrote Tata communicating Best Medical's position on certain outstanding invoices that Tata submitted to Best Nomos. *Id.* ¶ 5. In March 2010, Tata delivered a software package to Best Nomos. Joint Statement of Undisputed Facts ¶ 5. At no time after receipt of the software package did Best Nomos ever inform Tata that it would seek damages for any alleged late delivery of the software. Am. Joint Statement of Undisputed Facts ¶ 9. In fact, Best Nomos did not raise any issues regarding the software with Tata until it filed its Complaint in November 2010. *Id.*

5

## IV. DISCUSSION

### A. *Plaintiff's Breach of Contract Claim*

#### *1) Choice of Law Rules*

There is an issue as to which laws governs Plaintiff's breach of contract claim when, under the contract, Tata would perform its services in India and upload the software there for Plaintiff to access from its Pennsylvania office. As previously stated, the governing substantive law must guide this Court's determination of which facts are material to the resolution of this case. Best Medical is a Virginia corporation and Best Nomos is a division therein. Tata is a foreign entity organized under the laws of India. Therefore, this Court sits in diversity and must apply the substantive law of Virginia, including its choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

Under Virginia's choice of law rules, the interpretation, validity, and enforceability of a contract are generally determined by the law of the state where the contract is made. However, if the contract is to be performed in another place, then the law of the place where the contract is to be performed governs. *Poole v. Perkins*, 126 Va. 331, 335 101 S.E. 240, 241 (1919); *Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir. 1984) (citations omitted). Furthermore, claims relating to performance of a contract shall be governed by the law of the place of performance as construed by the highest court of that state. *Chesapeake Supply and Equip. v. J.I. Case Co.*, 700 F.Supp. 1415, 1417 (E.D. Va. 1988); 4 T. T. Whiteley *et al.*, Michie's Jurisprudence of Virginia & West Virginia, Conflict of Laws, Contracts, Rights and Duties § 25 (Lexis 2010). Breach of contract actions implicate performance issues. *Sneed v. Am. Bank Stationary Co.*, 764 F.Supp. 65, 67 (W.D. Va. 1991) (applying Virginia's conflict of law rules regarding performance of a contract to a breach of contract action and citing *Arkla Lumber & Mfg. Co. v. West Virginia Timber Co.*,

146 Va. 641, 132 S.E. 840 (1926)). Courts in this jurisdiction have considered the place of performance to be the place where the majority of the services are to be performed. *J. David Conti, Inc., v. Stokes Equip. Co.*, No. 3:94cv15, 1994 U.S. Dist. LEXIS 16926, at *20 (E.D. Va. Sept. 16, 1994) (holding that Virginia was the place of performance where the majority of the manufacturing and testing of the product was to take place in Virginia).

Plaintiff asserts that Pennsylvania is the appropriate place of performance under the March 2009 contract. To support this position, Plaintiff relies on Pennsylvania case law for the proposition that where a contract involves the sale of goods, the law of the place of delivery should apply. Pl.'s Supplemental. Mem. 13 (hereinafter, "Pl.'s Suppl. Mem."). The Court rejects Plaintiff's argument for two reasons. First, Plaintiff errs in relying on Pennsylvania conflict of law rules. As previously stated, this Court sits in Virginia and therefore must apply Virginia's choice of law rules. Second, the vast majority of the work that Tata was to perform under the contract was to occur in India. Accordingly, this Court finds that India was the place of performance regarding Plaintiff's breach of contract claim. Virginia's choice of law rules provide that the law of India should govern the claim.

The parties agree that the relevant Indian law to be applied is the Indian Contract Act of 1872 ("ICA"). Def.'s Supplemental. Mem. 4 (hereinafter, "Def.'s Suppl. Mem."); *See* Pl.'s Suppl. Mem. 3-12 (analyzing the facts of this case under sections of the ICA). Furthermore, other courts have applied the ICA to breach of contract claims governed under Indian law. *Byron v. Rajneesh Found Int'l*, 634 F.Supp. 489, 492 (D. Or. 1985) (applying Indian Contract Act in a breach of contract case involving plaintiff's loan of some monies to and deposit of monies with an Indian religious corporation at its commune in India). Accordingly, this Court

7

will apply the ICA when determining whether a genuine dispute as to a material fact exists as to Plaintiff's breach of contract claim.

Under the ICA, a plaintiff is successful on a breach of contract action if he can establish (1) the existence of a legally enforceable obligation, (2) a breach of that obligation, (3) and damages suffered as a result of the defendant's breach. *See* Indian Contract Act §§ 2, 7, 10, 73, No. 9 of 1872, A.I.R. MANUAL (2006) (hereinafter, "Indian Contract Act"). The parties here agree that a March 2009 agreement existed and conferred on each party a legal obligation. Therefore, no genuine dispute exists as to this fact.

### 2) *Time of the Essence*

The next issue is whether Defendant breached the March 2009 agreement by failing to produce the software package for Sonalis Phase I by May 3, 2009. In that regard, the ICA provides that

> [w]hen a party to a contract promises to do a certain thing at or before a specified time . . . and fails to do any such thing at or before the specified time . . . the contract, or so much of it as has not been performed, becomes voidable at the option of the promisee, if the intention of the parties was that time should be of the essence of the contract.

Indian Contract Act § 55. In *Gomathinayagam Pillai v. Pallaniswami Nadar*, (1967) A.I.R. 868 (1966) (India), the Supreme Court of India concurred with the High Court's finding that time was not of the essence in a written contract for the sale of land executed by plaintiff and defendant where the contract did not include an express stipulation that time was essential to the agreement. The court stated that "[i]ntention to make time of the essence, if expressed in writing, must be in the language which is unmistakable: it may also be inferred from . . . conduct of the parties and the surrounding circumstances at or before the contract." *Id.* Furthermore, the

8

court stated that "[f]ixation of the period, [sic] within which the contract is to be performed does not make the stipulation as to time of the essence of the contract." *Id.*

In the Amended Complaint, Plaintiff asserts that Defendant agreed to complete the reverse engineering services by May 3, 2009. Am. Compl. ¶ 8. However, in its supplemental memorandum in opposition to Defendant's Motion for Summary Judgment, Plaintiff contradicts its original position and states that no specified time existed by which Tata was to perform under the contract such that § 55 is inapplicable. Pl.'s Suppl. Mem.4. This Court expressly rejects the position taken by Plaintiff on its supplemental memorandum because it contradicts the express language of the Amended Complaint as well as the exhibits filed in support of Plaintiff's opposition to Defendant's Motion for Summary Judgment. Tom Rowden Aff. ¶ 9, Aug. 5, 2011. In that regard, Plaintiff asserts that the parties verbally agreed that Defendant would complete the project by the May 3, 2009 deadline. Opp. 14, 15; Tom Rowden Aff. ¶ 9, Aug. 5, 2011.

Defendant, however, asserts that time was not essential to the contract and that any promises to complete the software package by May 3, 2009 were aspirational and subject to contingencies. Def. Suppl. Mem. 7. Given that no written contract exists, this Court must look to the totality of circumstances surrounding the formation of the contract in order to resolve the issue regarding whether time was of the essence concerning Defendant's performance of its contractual obligations. Since the parties disagree as to whether time was of the essence, a genuine dispute exists as to this fact.

Even if time were of the essence, § 55 of the ICA provides that a party to a contract can waive its right to recover damages incurred because of the other party's failure to perform at the specified time. In that regard, Section 55 of the ICA provides that

> [i]f, in case of a contract voidable on account of the promisor's failure to perform his promise at the time agreed, the promisee accepts performance of

9

such promise at any time other than that agreed, the promisee cannot claim compensation for any loss occasioned by the non-performance of the promise at the time agreed, unless at the time of such acceptance he gives notice to the promisor of his intention to do so.

Indian Contract Act § 55. It is an uncontested fact that after Defendant failed to produce the software package on May 3, 2009, Plaintiff agreed to extend the time for Defendant's completion of the software package. Def.'s Suppl. Mem. 9; Pl.'s Suppl. Mem. 7. Accordingly, the plain language of the ICA provides that Plaintiff may only recover damages if, at the time it agreed to any extension, it informed Defendant that it would sue to recover any damages sustained because of any failure to receive the software package by May 3, 2009. There is no allegation that Plaintiff expressed any such intentions when it agreed to an extension of the deadline. Even if such allegation existed, Plaintiff has failed to produce any evidence to support it. Accordingly, this Court finds that there is no genuine dispute as to the fact that if time was of the essence in the March 2009 agreement, Plaintiff waived its right to seek damages that may have resulted from Defendant's failure to deliver the software package by May 3, 2009.[3] As a matter of law, Plaintiff is barred from recovering any damages due to an alleged breach of contract for Defendant's failure to perform at the specified time. Therefore, Defendant's motion for summary judgment shall be granted as to that claim.

### 3) *Unusable Software*

Plaintiff's Amended Complaint also asserts that Defendant breached the March 2009 agreement by failing to produce useable software. Am. Compl. ¶ 23. In its [Amended] Answer, Defendant denies the allegations that it failed to deliver satisfactory software to Plaintiff. [Am.] Answer ¶ 24. In its Supplemental Memorandum in support of its Motion for Summary

---

[3] Defendant delivered the software package to Plaintiff in March 2010. Following receipt of the software, Plaintiff never informed Defendant that it would seek any damages for the alleged late delivery. Am. Joint Stipulated Statement of Undisputed Facts ¶ 9.

Judgment, Defendant argues that Plaintiff waived its right to allege breach of contract because it accepted Tata's performance when it did not raise any issues with regard to the software delivered in March 2010 until it filed its Complaint.[4] Def.'s Supp. Mem. 10.

The proposal, which supplied many of the terms of the project, sets forth the procedure for acceptance of the software package. It states in the "[a]cceptance criteria and procedure" section that

> [Tata] will perform tests based on the test data provided by [Best Medical]. Test Cases provided by [Best Medical] will be used and augmented based on the new features added to the Treatment Planning System. [Best Medical] will test the functionality and features and revert back to [Tata] for any changes or corrections based on the results in the field.

Pl. Opp., Ex. 18 § 7.7. It also states that the "[c]ustomer has to approve documents [and] software releases." Id. It is undisputed by the parties that Tata delivered software executables to Best Medical, which Best Medical then returned to Tata to perform some debugging. Def.'s Suppl. Mem. 9; Am. Compl. ¶ 23; Pl.'s Opp., Ex. 10. In an e-mail dated February 22, 2010, an employee from Tata, Sai Adikarla, sent an e-mail to Tom Rowden discussing debugging work and stating the completion dates for the software package. Pl.'s Opp., Ex. 10. The e-mail expressly identifies March 3 as a date for "[f]eedback from Best Nomos on the above executable." Id. It is not clear from the facts currently before the Court whether the alleged problems with the March 2010 release were problems previously identified by Plaintiff or new problems. It appears from the language of the proposal that if the problems were new problems, Plaintiff may have had an obligation to allow Tata to cure those problems pursuant to the proposal. If Tata already had an opportunity to cure the problems but failed to do so, then Plaintiff complied with its obligation to allow Tata to cure. Furthermore, the proposal requires

---

[4] Plaintiff agrees that it did not raise any issues with Defendant concerning the software until it filed its Complaint in November 2010. Am. Joint Stipulated Statement of Undisputed Facts ¶ 9.

11

the customer's approval of software releases. Therefore, there is an issue as to whether Plaintiff's failure to approve the software package is sufficient to reject the goods or whether its silence may be accepted as approval and constitute waiver of any right to recover for breach of contract.

Defendant asserts that the latter is the appropriate interpretation and relies on § 63 of the ICA to support its position. Section 63 provides that "every promisee may dispense with or remit, wholly or in part, the performance of the promise made to him, or may extend the time for such performance, or may accept instead of it any satisfaction which he thinks fit." Indian Contract Act § 63. Defendant cites *Waman Shriniwas Kini v. Ratilal Bhgwandas & CA*, (1959) A.I.R. 689 (India) for the proposition that waiver is the abandonment of a right that everyone has. *Waman Shriniwas Kini v. Ratilal Bhgwandas*, however, is distinguishable from this case because the issue before the Indian court was whether the landlord could contract to waive a right to evict a tenant for subleasing where Indian law prohibited sublease agreements. *Id.* Ultimately, the Indian court held that the landlord could not waive a statutory right as to illegal conduct because such waiver would be against public policy. *Id.*

In *Sikkim Subba Associates v. State of Sikkim*, ___ A.I.R. ___ (2001) (India), the Supreme Court of India stated that "[w]aiver involves a conscious, voluntary and intentional relinquishment or abandonment of a known, existing legal right, advantage, benefit, claim or privilege, which except for such a waiver, the party would have enjoyed." In *Sikkim Subba Associates v. State of Sikkim*, the Indian court held that the defendant State did not waive its right of repudiation as to the contract with the plaintiff even though it continued to conduct lotteries after the plaintiff failed to deposit prize money with the state as required under the contract. *Id.* The court reasoned that the state could end the contract not only because of the continuing

defaults or wrongs but also with consideration of the money that it paid out of its own funds to cover previous defaults. *Id.*

Upon consideration of the facts before this Court, it appears that there is a genuine dispute as to what constituted acceptance of the software. Because the contract at issue in this case is comprised of a verbal agreement along with the terms of the proposal, it is unclear what the parties' understanding was, at the time of contracting, of the language of the proposal concerning customer approval of the software releases and the extent of Tata's right to cure. Furthermore, the parties in briefing this issue have failed to discuss the type of problem present in the March 2010 executable and whether Plaintiff had already identified such problems. This is a material fact that goes to whether or not Plaintiff complied with the "cure" provision of the proposal. Accordingly, the Court cannot conclude as a matter of law whether Tata breached the March 2009 agreement by failing to provide useable software. Thus, Defendant's Motion for Summary Judgment shall be denied with respect to Plaintiff's claim that Defendant breached the contract by failing to provide useable software.

### 4) *Lost Profit Damages*

Regarding damages for breach of contract claims the ICA provides that

> [w]hen a contract has been broken, the party who suffers by such breach is entitled to receive, from the party who has broken the contract, compensation for any loss or damage caused to him thereby, which naturally arose in the usual course of things from such breach, or which the parties knew, when they made the contract, to be likely to result from the breach of it. Such compensation is not to be given for any remote and indirect loss or damage sustained by reason of the breach.

Indian Contract Act § 73. A plain reading of the statute indicates that a plaintiff is only entitled to recover those damages that it suffers as a result of a breach of contract, if such damages were in the contemplation of the parties and foreseeable at the time the parties executed the contract. Furthermore, the Supreme Court of India has denied damages for loss profits sought by a

13

plaintiff on a breach of contract claim where the plaintiff has failed to provide evidence of quantifiable damages. *See Murlidhar Chiranjilal v. Harishchandra Dwarkadas Anr.*, (1962) A.I.R. 366 (1961) (India) (holding that plaintiff was not entitled to any damages because he failed to prove the rate for the canvas for which he contracted and which the defendant failed to produce).

Plaintiff asserts that as a result of Defendant's failure to deliver useable software, Plaintiff suffered damages as follows: (1) Plaintiff incurred expenses by having its employees complete the project; (2) Plaintiff stopped marketing the software package and discarded all merchandising material; (3) Plaintiff withdrew acceptances of software package orders and reimbursed customers for equipment purchased in anticipation of receiving the product; and (4) Plaintiff suffered harm to its reputation in the medical equipment community in general and in connection with the software package at issue. Am. Compl. ¶¶ 24-29. Finally, Plaintiff asserts that it suffered damages in excess of $5 million dollars as a result of Defendant's breach.

Even if this Court, accepting the facts as true in the light most favorable to Plaintiff, finds that Defendant breached the March 2009 Agreement by failing to provide Plaintiff with useable software, there is still an issue as to the amount of damages Plaintiff has suffered. Defendant asserts that Plaintiff has failed to produce in discovery any documentation as to a single order of the software package that it had to withdraw because of Defendant's failure to produce a useable product. Def.'s Suppl. Mem. 10. Plaintiff asserts that Defendant knew or should have known that Plaintiff intended to resell the software package such that it should be liable for any damages that Defendant sustained. Pl.'s Suppl. Mem. 10-12.

In *Murlidhar Chiranjilal v. Harishchandra Dwarkadas Anr.*, the Supreme Court of India highlighted a case in which it explained that the contract provided plaintiff with a right to seek

lost profits. 1962 A.I.R. 366 (1961) (India). The court stated that such case was a special case because "the parties knew that goods purchased were likely to be resold before delivery and therefore any loss by the breach of contract eventually may include loss that may have been suffered by the buyers because of *failure to honour the intermediate contract of resale made by them*." (emphasis added).

Plaintiff asserts that Defendant's breach caused it to withdraw proposals that it made to customers for the software package. By its own admission, Plaintiff's proposals were not contracts for the sale of the software package, but were essentially offers to sell. Pl.'s Opp., Ex. 5 Tom Rowden Dep. 51:13-19, June 7, 2011 (stating that "[a proposal] is a quotation to a customer or potential customer which may never turned [sic] into customers for the delivery of a product"). Furthermore, counsel for Plaintiff has stated in open court that Plaintiff did not have any contracts with customers for the software package that it was required to breach as a result of Defendant's failure to produce useable software. Instead, Plaintiff asserts that it had to withdraw the proposals so that customers would not accept the offer and request a product that Plaintiff did not have.

Upon consideration of these facts, this Court finds that any damages that Plaintiff alleges that it suffered as a result of having to withdraw offers for the software package are remote and indirect. Even if this Court accepts the argument that at the time of contracting Tata knew that Plaintiff intended to offer the software package for resale, such knowledge in and of itself cannot expose Tata to liability for every offer that Plaintiff chose to make to a potential customer. As evidenced by the Indian court's discussion in *Murlidhar Chiranjilal v. Harishchandra Dwarkadas Anr.*, a plaintiff may be compensated for lost profits from contracts that it was unable to honor as a result of defendant's breach. Plaintiff here, however, has failed to provide evidence

of any contracts that it was unable to honor as a result of Defendant's alleged breach of the March 2009 agreement. Therefore, there is no genuine dispute as to this fact.

Furthermore, Indian law provides that a plaintiff must be able to quantify its damages. Even if this Court were to find that Tata breached the March 2009 agreement, Plaintiff has failed to provide any evidence to support its assertion that the withdrawal of proposals damaged it in an amount in excess of five million dollars. Accordingly, this Court finds that as a matter of law, Plaintiff is unable to recover the lost profit damages that it seeks pursuant to its breach of contract claim. Summary judgment shall be entered in favor of Defendant as to Plaintiff's request for lost profit damages.

### 5) *Employee Expenses*

Plaintiff also asserts that Defendant's failure to deliver a useable product has damaged it because it had to pay its employees to complete the work that Tata failed to complete. Plaintiff asserts in the Amended Complaint that it has incurred expenses in the amount of $80,000 for the money that it paid its employees to complete the software package that Defendant allegedly delivered in an unusable format. Am. Compl. ¶ 24. The facts before the Court are that Plaintiff utilized two employees to complete the work. Rowden Dep. 56:5-8. There are no documents that show the actual work that was performed by these employees. *Id.* at 57:18-20. However, there is source code written for the software package by the employees that demonstrates that they did perform work on the project. *Id.* It appears from the deposition of Tom Rowden that these employees were already working for Best Nomos, but were brought onto the Sonalis Project to complete the software. *Id.* at 21:22 (stating, "they're internal employees of Nomos"). There are no facts before this Court that suggest that Plaintiff paid money that it would not have otherwise paid to its employees as a result of Defendant's alleged breach.

However, this Court cannot say at this time whether testimonial evidence may be offered to demonstrate that Plaintiff paid for work that it otherwise would not have paid for had Tata not breached its contract with Plaintiff. Upon consideration of this fact, this Court finds that at this juncture it cannot rule, as a matter of law, that Plaintiff cannot recover the compensation paid to its employees for work performed to complete the software package. Therefore, Defendant's Motion for Summary Judgment is denied as to damages in this regard.

### 6) Reputation and Other Damages

Finally, the Amended Complaint states that the withdrawal of proposals caused "significant and irreparable harm to Plaintiff's reputation in the medical product community as a whole and particularly with regard to the anticipated software and equipment platforms involved in the contract." Am. Compl. ¶ 25. Plaintiff has failed to present any evidence of the damage that it has sustained to its reputation. Accordingly this Court finds that, for the same reasons set forth in the section regarding loss of profit, as a matter of law, Plaintiff may not recover damages for harm to reputation.

In Plaintiff's Opposition to the Defendant's Motion for Summary Judgment, it states that it has been damaged in the amount of $362,757, which it paid to Defendant to reverse engineer and upgrade the software. Opp. 23. Plaintiff contends that because Defendant provided little or no software, the $362,757 that Defendant received from Plaintiff was a benefit for work that Defendant had not performed. *Id.* The Amended Complaint shows that Plaintiff sought damages in this amount under its unjust enrichment claim and not its breach of contract claim. As previously stated, this Court dismissed Plaintiff's unjust enrichment claim. Furthermore, Tom Rowden admits that there were different deliverables within the project process and that Plaintiff paid Defendant after it performed some modifications on the system software. *See* Rowden Dep.

39:4-10. Because the $362,757 are not damages that Plaintiff seeks under the breach of contract claim, this Court finds, as a matter of law, that Plaintiff cannot recover such damages. Accordingly, Defendant's Motion for Summary Judgment is granted in regards to this damages request.

In sum, this Court shall grant in part and deny in part Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim. The Motion is granted in regards to any damages for lost profits, or harm to reputation. The Motion is denied in regards to the question of breach and damages for expenses Plaintiff incurred for compensating its employees to complete the software package.

### B. Defendant's Breach of Contract Counterclaim

In its [Amended] Counterclaim, Defendant asserts that Plaintiff has failed to pay it $55,870 in regards to work it performed on the Corvos and Sonalis Phase II projects for Plaintiff. [Am.] Countercl. ¶. Since Plaintiff's payment to Defendant would be made from Virginia, this Court finds that the place of performance as to Defendant's breach of contract counterclaim is Virginia. Pursuant to Virginia's choice of law rules, the law of the place of performance applies so this claim is governed by the law of Virginia.[5]

Under Virginia law, a party successfully proves a breach of contract claim if he can show that defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused plaintiff damage. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). However, when a party commits the first material breach of the contract, the

---

[5] Virginia is one of few states that adhere to a traditional approach to conflict of law analysis. Peter Hay, Conflict of Laws, Fifth Edition, § 18.14 n.1 (West 2010) (citing Virginia as one of twelve states that has yet to abandon the traditional approach to resolving contract issues involving a conflict of law). Accordingly, under its choice of law rules, it is possible to apply the law of two different states on two separate claims arising out of the same set of facts. *See Hagan v. Feld Entertainment, Inc.*, 365 F.Supp.2d 700, 707 (E.D. Va. 2005).

18

party is estopped from enforcing the contract. *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 541 S.E.2d 279, 285 (2001). A breach is material where failure to perform the obligation "defeats an essential purpose of the contract." *Id.*

In its [Amended Counterclaim] Defendant alleges that it fully performed the work requested pursuant to Corvous and Sonalis purchase orders but that Plaintiff has failed to pay it in violation of those agreements. [Am.] Countercl. ¶¶ 19-22. In its Opposition, Plaintiff asserts that (1) Defendant billed Plaintiff for Phase II work before Plaintiff issued purchase order for that work; (2) some of the hours for which Defendant has billed could not be attributed to work completed under Phase II because work could not begin on Phase II until Defendant completed Phase I, which Plaintiff contends never occurred; and (3) Defendant failed to produce a product in connection with the work that it allegedly performed. Opp. 27. This Court has already stated that a genuine dispute exists as to a material fact in relation to Plaintiff's allegation that Defendant breached the contract. If this Court finds that the Defendant first breached the contract with Plaintiff by failing to deliver a useable product, then Defendant is barred from suing Plaintiff to enforce the contract as such performance is material to the agreement. For these reasons, this Court finds that it cannot rule on Defendant's breach of contract claim as a matter of law. Accordingly, Defendant's Motion for Summary Judgment shall be denied as to its breach of contract claim. An appropriate Order to follow.

/s/
Ivan D. Davis
United States Magistrate Judge

November 21, 2011
Alexandria, Virginia